RECORD NO. 13-7325

In The

# United States Court of Appeals

### For The Fourth Circuit

## KALVIN MICHAEL SMITH,

*Petitioner – Appellant,*

v.

## TODD PINION, Superintendent,

*Respondent – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO

―――――――――

## PETITION FOR REHEARING AND REHEARING *EN BANC*

―――――――――

James E. Coleman, Jr.
DUKE UNIVERSITY SCHOOL OF LAW
210 Science Drive, Box 90360
Durham, North Carolina 27708
(919) 613-7057

*Counsel for Petitioner*

David Pishko
LAW OFFICE OF DAVID PISHKO, P.A.
100 North Cherry Street, Suite 510
Winston-Salem, North Carolina 27101
(336) 310-0088

*Counsel for Petitioner*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................iii

STATEMENT OF THE PROCEEDINGS ..................................................... 1

ARGUMENT ................................................................................................. 3

REHEARING SHOULD BE GRANTED BECAUSE THE
DENIAL OF A CERTIFICATE OF APPEALABILITY
RAISES ISSUES OF EXCEPTIONAL IMPORTANCE .................... 3

The district court's due diligence analysis under AEDPA,
28 U.S.C. § 2244(d)(2)(D), retroactively imposed a duty
on Petitioner to request "potentially relevant" evidence,
even though
(1) the evidence was favorable under *Brady v. Maryland*
and thus the State had a constitutional duty to disclose it
to Petitioner; (2) the evidence was in the sole possession
of the State, and
(3) only the State knew that the evidence was favorable.
The district court's decision is contrary to well-
established Supreme Court precedent, inconsistent with
published decisions of this Court, and conflicts with the
application of *Brady* in other Circuits ......................................... 3

CONCLUSION ............................................................................................ 15

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Youngblood*,
    488 U.S. 51 (1988)………......……………………………………..6

*Banks v. Reynolds,*
    54 F.3d 1508 (10th Cir. 1995)…………………………………….10

*Brady v. Maryland*,
    373 U.S. 83 (1963)......................................................................*passim*

*Fullwood v. Lee*,
    290 F.3d 663 (4th Cir. 2002) .......................................... 4, 13

*In re Sealed Case,*
    185 F.3d 887 (D.C. Cir. 1999)…………………………………10

*McAleese v. Brennan*,
    483 F.3d 206 (3d Cir. 2007)................................................ 13

*McLain v. Taco Bell Corp.,*
    527 S.E.2d 712 (N.C. Ct. App. 2000)………………………..9

*McQuiggin v. Perkins*,
    __ U.S. __, 133 S. Ct. 1924 (2013).................................... 1

*Rivas v. Fischer*,
    687 F.3d 514 (2d Cir. 2012)....................................... 4, 12, 15

*Rompilla v. Beard*,
    545 U.S. 374 (2005)............................................................ 7

*Schlueter v. Varner*,
    384 F.3d 69 (3d Cir. 2004)................................................ 13

*Schlup v. Delo,*
    513 U.S. 298 (1995)............................................................................. 1

*Slack v. McDanial,*
    529 U.S. 473 (2000)............................................................................. 2

*Spicer v. Roxbury Correctional Inst.,*
    194 F.3d 547 (4th Cir. 1999) ............................................................. 10

*Strickland v. Washington,*
    466 U.S. 668 (1984).............................................................................. 7

*Teleguz v. Rearson,*
    689 F.3d 322 (4th Cir. 2012) ........................................................ 1, 15

*United States v. Agurs,*
    427 U.S. 97 (1976)............................................................................ 4,10

*United States v. Bagley,*
    473 U.S. 667 (1985)…………………………………………………10

*United States v. King,*
    628 F.3d 693 (4th Cir. 2011) ......................................................... 4, 13

*United States v. Stokes,*
    261 F.3d 496 (4th Cir. 2001) ............................................................. 10

*United States v. Wilson,*
    624 F.3d 640 (4th Cir 2012) ............................................................. 10

*Voduesk v. Bayliner Marine Corp.,*
    71 F.3d 148 (4th Cir. 1995)……………………………………………9

*Wiggins v. Smith,*
    539 U.S. 510 (2003)............................................................................... 7

*Yarborough v. Hughes,*
    139 N.C. 199 (1905)………………………………………………….9

**STATUTES**

28 U.S.C. § 2244(d)(1)(D) ................................................................. 1, 3, 4, 14

28 U.S.C. § 2253(c) ................................................................................ 1, 2

28 U.S.C. § 2254 ....................................................................................... 1

28 U.S.C. § 2254(d)(2) .......................................................................... 1, 3, 4

**RULES**

Fed. R. App. P. 22(b) ............................................................................. 1, 2

Fed. R. App. P. 35 .................................................................................. 1, 2

Fed. R. App. P. 40 ..................................................................................... 1

## PETITION FOR REHEARING AND REHEARING *EN BANC*

Pursuant to Federal Rules of Appellate Procedure 35 and 40 and Local Rules 35 and 40, Petitioner/Appellant Kalvin Michael Smith petitions the Court for rehearing or rehearing en banc of the order entered by a panel of this Court on January 23, 2014, denying a certificate of appealability under 28 U.S.C. § 2253(c) and Fed.R.App.P. 22(b).

## STATEMENT OF THE PROCEEDINGS

This is a direct appeal of a final judgment of the district court entered on July 29, 2013, dismissing Mr. Smith's petition for writ of habeas corpus on the ground that all of his claims were untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1)(D). Mr. Smith also seeks review of the district court's denial of an evidentiary hearing under *Teleguz v. Rearson*, 689 F. 3d 322 (4th Cir. 2012), to permit Mr. Smith to show that he was entitled to equitable relief from AEDPA's one-year statutory bar under *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924 (2013) and *Schlup v. Delo*, 513 U.S. 298 (1995). The district court had jurisdiction under 28 U.S.C. § 2254. The district court's *sua sponte* denial of a certificate of appealability put its decision beyond appellate review unless this Court grants the certificate.

Mr. Smith filed a timely notice of appeal on August 16, 2013. This Court has jurisdiction to determine whether to grant a certificate of appealability under 28 U.S.C. § 2253(c) and Fed.R.App.P. 22(b).

When, as here, the district court denies relief on procedural grounds, a certificate of appealability will be granted if petitioner demonstrates both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right. *Slack v. McDanial,* 529 U.S. 473, 484-45 (2000). In a *per curiam* opinion dated January 23, 2014, a panel of this Court summarily denied a certificate of appealability and dismissed the appeal. Panel Op at 2. The panel's only explanation for its decision was that "Smith has not made the requisite showing." *Id.*

This Petition for rehearing and rehearing en banc is timely under Rule 35of the Federal Rules of Appellate Procedure.

## ARGUMENT

### REHEARING SHOULD BE GRANTED BECAUSE THE DENIAL OF A CERTIFICATE OF APPEALABILITY RAISES ISSUES OF EXCEPTIONAL IMPORTANCE.

The district court's due diligence analysis under AEDPA, 28 U.S.C. § 2244(d)(1)(D) retroactively imposed a duty on Petitioner to request "potentially relevant" evidence, even though (1) the evidence was favorable under *Brady v. Maryland*, 373 U.S. 83 (1963), and thus the State had a constitutional duty to disclose it to Petitioner; (2) the evidence was in the sole possession of the State, and (3) only the State knew that the evidence was favorable. The district court's decision is contrary to well-established Supreme Court precedent, inconsistent with published decisions of this Court, and conflicts with the application of *Brady* in other Circuits.

The district court does not address the threshold question required by a due diligence determination under 28 U.S.C. § 2254(d)(2): what is the factual predicate for Petitioner's *habeas* claims? For example, the court found that Petitioner's *Brady* claim based on the suppressed identities of suspects shown to Jill Marker in 1996 was untimely because Petitioner's counsel knew in 1997 that some of the photographic arrays included photographs of black men. But the court does not explain how that information alone would have allowed Petitioner to discover that the State had failed to disclose that Petitioner's photograph was included in one of the arrays and that Ms. Marker did not identify him as her assailant.

The appropriate approach for the inquiry required by 28 U.S.C. § 2254(d)(2)(D) is set out in *Rivas v. Fischer*, 687 F.3d 514 (2d Cir. 2012). There,

3

the court said that the determination of the date on which the factual predicate for a

habeas claim is first discoverable is "a 'fact-specific' inquiry which requires a

district court to analyze the factual bases of each claim and to determine when the

facts underlying the claim were known, or could with due diligence have been

discovered." *Rivas*, 687 F.2d at 534. A factual predicate of a claim consists of the

"vital facts" underlying the claim. *Id.* at 535.

The factual predicate for any *Brady* claim is the State's suppression of

specific evidence that is favorable and material. *"Brady* teaches us that the

prosecution deprives a criminal defendant of due process when it suppresses

evidence that is 'favorable to an accused . . . where the evidence is material to

either guilt or to punish, irrespective of the good faith or bad faith of the

prosecution.'" *Fullwood v. Lee,* 290 F.3d 663, 685 (4th Cir. 2002) (citing *Brady,*

373 U.S. at 87). As this Court has noted, *"Brady* violations usually involve 'the

discovery, after trial of information which had been known to the prosecution but

unknown to the defense." *United States v. King*, 628 F.3d 693, 702-03 (4th Cir.

2011) (quoting *United States v. Agurs,* 427 U.S. 97, 103).

In this case, the factual predicates for Petitioner's three *Brady* claims are:

4

1.      On October 31, 1996, after Winston-Salem Police Department

("WSPD") detectives had cleared Petitioner as a suspect,[1] detectives showed

Jill Marker, the victim in this case, several photographic lineups, including one

that contained Petitioner's photograph and Ms. Marker did not identify him as

her assailant.  Petitioner learned this information on August 30, 2007.  On

January 11, 2005, after seeing the videotape of the interview in which Ms.

Marker was shown the lineups, the Duke Innocence Project asked the Forsyth

County District Attorney if he could identify the suspects whose photographs

detectives showed Ms. Marker on October 31, 1996.  On August 30, 2007, after

repeated requests, the District Attorney finally informed the Duke Innocence

Project that "we think it fair to conclude that Ms. Marker viewed an array

containing the defendant and that she did not identify him . . . [I]nformation

about the [1996] lineup constitutes *Brady* material that should have been

---

[1]      In the same written report in which the WSPD detectives documented their October
31, 1996, interview with Ms. Marker, without mentioning that they had shown her photo
arrays, the detectives wrote that, "on 07-22-96, Mr. [K]alvin Michael Smith was arrested
[and] waived his rights and signed a rights waiver document form and agreed to be
questioned concerning this case."  Petitioner "agreed to submit to a polygraph examination
which he did submit to and which was administered by Detective L.M. Maines.  At the
conclusion of the polygraph examination, Detective Maines informed me that Mr. [K]alvin
Smith was truthful in his answers to not being involved in this case." 2d MAR Ex. 28 at 1-2
(November 4, 1996).  In the same report, the detective reported that in the October 31,
1996, interview, "Ms. Jill Marker did not know the [assailant's] name and was not
absolutely sure from her responses if she could identify the person in a photograph." *Id.* at
4.  The report said nothing about detectives having shown Ms. Marker photo lineups.

provided to the defense." Attachments to Petition for Rehearing and Rehearing *En Banc* at 197 ("Attach. at").

2.    Prior to Petitioner's trial, Eugene Littlejohn, the State's key alleged eyewitness, made a statement to WSPD Detective D.R. Williams that on the night of the attack on Ms. Marker, Mr. Littlejohn and Petitioner went into the Toys R Us store next door to the Silk Plant Forest where the attack occurred. That statement was not disclosed to Petitioner prior to trial. After obtaining this statement, Detective D.R. Williams reviewed a surveillance video he had seized from Toys R Us in December 1995 to see if Mr. Littlejohn had told the truth. Shortly after reviewing the video, Detective Williams destroyed it or otherwise disposed of it. Petitioner learned these facts at the 2d MAR evidentiary hearing in January 2009 when former Detective Williams revealed them in his testimony.[2] 2d MAR Tr. 264.

3.    On March 4, 1997, Eugene Littlejohn, the State's key witness, told detectives that he witnessed Petitioner grab Jill Marker by both arms and demand money. He said he "knew that [Petitioner] grabbing [Ms. Marker] was robbery." Attach. at 101. At trial, Mr. Littlejohn was the only witness who linked Petitioner to a robbery of Jill Marker when he testified that he saw

---

[2]    The failure to preserve the videotape, after reviewing it, reflected bad faith, in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988).

Petitioner reach over the large counter, grab Ms. Marker by the arms, and demand "his money." Trial Tr. at 335-36.[3] On August 27, 1997, however, Mr. Littlejohn made a statement to a WSPD polygraph examiner that he had not been present in the store when Ms. Marker was robbed. The examiner believed that this statement was truthful. Although Detective Williams prepared a written report in which he discussed the polygraph examination and attached the three questions the examiner asked Petitioner (Attach. at 55), the report did not document Mr. Littlejohn's response to the question, "were you present in the Silk Plant Forest when the clerk was robbed?" *See,* Attach. at 3-6. Petitioner learned of Mr. Littlejohn's response to that question on January 7, 2009, when Lonnie Mains, the polygraph examiner, testified at Petitioner's 2d MAR evidentiary hearing. 2d MAR Tr. at 574.[4]

The district court held that all of Petitioner's habeas claims were untimely under AEDPA's one-year statute of limitations because Petitioner could have discovered all of the suppressed evidence in 1997, if he had

---

[3]    *See* Attach. at 111 (photograph of the large counter Petitioner allegedly reached over).

[4]    In his habeas petition, Petitioner also makes alternative claims that his trial counsel's failure (1) to investigate the 1996 photographic lineups shown to Ms. Marker and (2) and follow-up on the Toys R Us surveillance video, which became relevant after Mr. Littlejohn's trial testimony that he and Petitioner went into the Toys R Us on the night Ms. Marker was attacked constituted ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668 (1984). *See also, Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003). These IAC claims are derivative of Petitioner's *Brady* claims.

exercised reasonable due diligence; specifically, the court held that all of the "vital facts" underlying the claims could have been discovered prior to August 30, 2007. A panel of this Court apparently found that this procedural ruling was not debatable among reasonable judges and denied a certificate of appealability.[5] On the facts of this case, however, that conclusion raises issues of extraordinary importance.

The district court ignored altogether Respondent's obligations under *Brady v. Maryland.* Instead, it merely assumed that Petitioner could have obtained all of the suppressed evidence simply by asking for it in 1997. But clearly the State's failure to disclose this favorable evidence at least states a debatable constitutional claim that Petitioner's rights under *Brady* were violated, *in light of the central role that Ms. Marker's alleged identifications of Petitioner and Mr. Littlejohn's alleged eyewitness testimony played in Petitioner's trial.* Indeed, the District Attorney conceded that information about the [October 1996] line-up constitutes *Brady* material that should have been provided to the defense." Op. at 5; *see also* Attach. at 197. Without the

---

[5]    As noted, the panel did not explain the basis for its decision, except that Petitioner "has not made the requisite showing." Panel Op. at 2. Thus, the panel also may have found that this conclusion was debatable, but that the Petition did not state a debatable denial of a constitutional right; or it may have found that both propositions were true. In any event, Petitioner submits that both conclusions are clearly wrong.

State's prior disclosure of the suppressed information, however, Petitioner

had no independent way to discover the "vital facts."[6]

The effect of the district court's decision was to establish retroactively

an obligation on Petitioner's part to ask for information and evidence that he

had no way to know might be favorable, material, and suppressed.  Still, the

district court found Petitioner's failure to ask for the information showed a

lack of due diligence, even though the State had an independent constitutional

duty to disclose the information.  Such a draconian extinguishing of a

---

[6]      In the case of the Toys R Us surveillance video, the district court found that "Mr. Smith knew that the video recorded events occurring on the night of the attack in the shopping center where the attack took place." Slip Op at 10-11.  That finding is clearly wrong.  As the detective who reviewed the video testified, the video recorded only matters taking place inside the Toys R Us store; the tape had no general relevance.  2d MAR Tr. at 264.  Moreover, the MAR court's finding that there was "no evidence . . . that the videotape was withheld from [Petitioner] before or during trial," is clearly wrong.  Again, the detective who seized and reviewed the videotape testified at the MAR evidentiary hearing that after reviewing videotape to see if Mr. Littlejohn had told the truth, he got rid of it.  *Id.* at 265.  The State now cannot account for the video.  These are the kind of careless findings of fact that prejudiced the district court's analysis and that Petitioner should be given a fair chance to correct.
         The court acknowledges that the date of Mr. Littlejohn's trial testimony may have been the latest relevant point at which Petitioner should have known that the Toys R Us videotape was relevant to his defense. Slip Op at 11.  But the court fails to acknowledge that by that time, the Toys R Us video was no longer available for disclosure; the State already had disposed of it, after reviewing it.  From this, the Court can infer that the videotape was favorable to Petitioner.  *See McLain v. Taco Bell Corp.,* 527 S.E. 2d 712 (N.C. Ct. App. 2000) (granted Plaintiff a new trial because the lower court failed to instruct jurt that inference may be drawn against party withholding or destroying relevant evidence in its possession); *see also, Voduesk v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995) ("Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence."); *Yarborough v. Hughes,* 139 N.C. 199 (1905) ("where a party fails to introduce in evidence documents that are relevant to the matter in question and within his control ... there is a presumption, or at least an inference that the evidence withheld, if forthcoming, would injure his case.").

constitutional right is inconsistent with well-established Supreme Court precedent that the State must disclose all material evidence favorable to the defense, whether or not the defense specifically requests the evidence. *United States v. Agurs,* 427 U.S. 97, 107-11 (1976); *United States v. Bagley*, 473 U.S. 667, 682 (1985) (holding that *regardless of request*, constitutional error results from the suppression of favorable evidence). The published decisions of this Court have consistently held that the State's obligation under *Brady* does not depend upon the defendant requesting evidence; *Brady* is violated whether the suppression is willful or inadvertent. *United States v. Wilson,* 624 F.3d 640, 660-61 (4th Cir 2012); *United States v. Stokes,* 261 F.3d 496, 502 (4th Cir. 2001); *Spicer v. Roxbury Correctional Inst.,* 194 F.3d 547, 555 (4th Cir. 1999). Indeed, this has led some courts of appeals to exclude *Brady* claims from due diligence analysis altogether.[7] *Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *In Re Sealed Case*, 185 F.3d 887, 896 (D.C. Cir. 1999).

The district court ignored the state's *Brady* disclosure obligations in its due diligence analysis of the suppressed photographic lineups that detectives showed to Jill Marker on October 31, 1996, and instead assumed that because the State MAR court found that Petitioner's counsel had viewed the entire

---

[7]     As noted, this is not a case where the questioned evidence was equally available to Petitioner. Only the State could have disclosed the relevant information and evidence.

video of the detectives' October 31, 1996 interview of Ms. Marker, he was

aware that the detectives had shown her photographic lineups and therefore

could have asked for the lineups.  Slip Op. at 5 (citing Doc. 21-5 at 38-41, 47 at

¶60).  But as *Figure 1*, below, shows, the identities of the black men in the

photo arrays cannot be ascertained from watching the video.



*Figure 1.  A screenshot from the videotape of the October 31, 1996, interview of Jill Marker, showing Detective D.R. Williams holding a photographic lineup with photographs of six black men.  At the time of this interview, Ms. Marker could not talk, had poor eyesight, and communicated only by moving her head; often, the meaning of her head movements could not be discerned.[8]*

Petitioner is not aware of any other case in which a court has found a

lack of due diligence because the defendant failed to discover facts that were

known only to the State and were in the State's exclusive possession.  None of

---

[8]    The MAR court found that during the October 31, 1996, interview, "Ms. Marker was in poor physical condition when she viewed the 1996 photograph lineup."  (Doc-21-5 at 47; Slip Op at 15)  Moreover, "it was apparent from the video that Ms. Marker could not clearly see the photos that were shown her."  Slip Op at 15.

the cases cited by the district court involved such a situation. Without the
actual photo arrays shown to Ms. Marker in October 1996, the detectives who
conducted the lineup were the only source of the suppressed information
about the interview.[9] But those detectives did not document in any way that
portion of the interview during which they showed photo arrays to Ms.
Marker. As the WSPD wrote in its 2007 administrative review of the
detectives' handling of this interview,

> Detective Williams submitted a supplement report dated November 4,
> 1996, about his trip to Ohio. Detective Williams' report contained the
> prepared questions he asked Ms. Marker during the questionnaire
> interview, *but Detective Williams did not document the line-ups shown to*
> *Ms. Marker, the suspects contained in those lineups, or identification of*
> *any photographs.*

MAR Ex. 16 at 15 0f 23 (emphasis added). The review continued,

> *Detective Williams violated policy when he incompletely documented the*
> *October 31, 1996, Marker interview.* Detective Williams showed Ms.
> Marker three line-ups containing black males (one believed to be the
> Smith lineup) and asked if she could identify her assailant; she did not

---

[9]    The District Attorney conceded that the former detective was not a reliable source
of information about the withheld information. *See,* Attach. at 197. Indeed, the District
Attorney may have relied on the work of the forensic video analysts to confirm in August
2007 that Petitioner's photograph was included in photo arrays shown to Ms. Marker. In
his letter of August 30, 2007, the District Attorney noted that although Detective Williams
said in a meeting on August 14, 2007, that Petitioner's photograph was shown to Ms.
Marker, he subsequently "told us that he really can not remember who was in the lineup. . .
." Attach at 197. Nevertheless, the District Attorney concluded it was likely Petitioner's
photograph was shown to Ms. Marker "based upon related records." *Id.* Without that
admission, Petitioner did not know the "vita facts" necessary to prove his Brady claim. The
district court failed to make the "fact-specific" inquiry necessary to support her contrary
conclusion. *Rivas v. Fischer*, 687 F.3d at 534.

identify anyone.  Detective Williams also presented a line-up of white males (believed to be the Lamoureux line-up).  This item she was asked if she saw anyone who had been in her store before.  It appeared that she pointed to a photograph on the page, but because of the camera's position, only the backs of the line-ups are filmed; the film does not record Ms. Marker's identification in a useful fashion.  Some in the room concluded Ms. Marker pointed to photo #3, which was Lamoureux. *Detective Williams documented none of this.*

*Id.* at 20 of 23 (emphasis added).[10]

None of the cases relied upon by the district court supports its

conclusion that the failure to ask for information constituted a lack of due

diligence where the defendant did not know about the information and had no

way of discovering it independently of the State.  *United States v. King*, 628

F.3d 693 (4th Cir. 2011); *McAleese v. Brennan, 483 F.3d 206 (3d Cir. 2007);*

*Schlueter v. Varner*, 384 F.3d 69 (3rd Cir. 2004); *Fullwood v. Lee*, 290 F.3d 663

(4th Cir. 2002).  All of these are cases in which the vital facts were in the

possession of the defendant, a third party aligned with the defendant, or were

equally available to the State and the defendant.

---

[10]    Kenneth Earl Lamoureux was the principal suspect for the first six months of the investigation.  He is a white man who had previously stalked Ms. Marker and was identified by several witnesses inside and outside the Silk Plant Forest on the night Ms. Marker was attacked.  A friend of Ms. Marker who spoke with Ms. Marker by telephone only minutes before the attack said Ms. Marker was concerned that Mr. Lamoureux had stalked out of the Silk Plant Forest that night angry because she turned down his invitation to take her to dinner.  *See,* Affidavit of Jeanna Schopfer, Ex. 4 to Petitioner's Opposition to Respondent's Motion to Dismiss (Feb. 24, 2010).  Although Detective Williams interviewed Ms. Schopfer, he did not document this telephone conversation. But Mr. Lamoureux became the prime suspect as a result of Ms. Schopfer's call to the police on the morning after Ms. Marker was attacked.  2d MAR Ex. 17.

Finally, contrary to the district court's assumption, there is no evidence that, in 1997, the State had possession of the actual photographs shown to Ms. Marker in 1996 or the Toys R Us video when it became relevant during Petitioner's trial in December 1997.  The prosecutor did not attach the photographs to the State's notice of intent to use the October 31, 1996, interview at trial (*see* Attach. at 115), as it did with the photographic lineups shown to Ms. Marker on September  4, 1997 (Attach. at 123-36).   Nor could the State produce the lineups when the Duke Innocence Project asked for them in 2005 (Attach. at 162-63).  In fact the State has never produced the photographs.  And, even now, the State cannot identify the individual photographs shown to Ms. Marker in 1996.[11]

---

[11]     The same analysis applies to the suppressed Toys R Us video and the suppressed polygraph statement.  In both cases, other than a truthful admission by the State, there was not way Petitioner could have discovered the factual predicate for a *Brady* claim.  The State destroyed or otherwise disposed of the surveillance video, after reviewing it and before trial, and there was no written record that documented that fact.  Likewise, except for the testimony of the polygraph examiner in January 2009, there was no independent way Petitioner could have discovered the actual statement that its key witness made to the State.

The Silk Plant Forest Citizens Review Committee finally determined, prior to the 2d MAR evidentiary hearing in January 2009, that Petitioner's photograph was in one of the photo arrays shown to Ms. Marker.  But that took the extraordinary efforts of two WSPD forensic video analysts, working with the Committee and two WSPD officers who assisted the Committee.  See, 2d MAR Tr. at 164-82 (January 5, 2009).  But, as the district court noted, "[d]ue diligence does not require 'the maximum feasible diligence,' [it requires only] reasonable diligence in the circumstances."  Slip Op at 6.

In sum, the district court's application of 28 U.S.C. § 2254(d)(2) negated the State's obligation under *Brady* to produce favorable evidence that was in its exclusive possession. Petitioner submits that such a result raises issues of extraordinary importance that should be reviewed by this Court.

## CONCLUSION

For the reasons stated herein and in Appellant's Informal Brief, Petitioner implores the Court to grant a certificate of appealability and allow him to appeal from the district court's summary dismissal of his habeas petition, on both the timeliness grounds and the district court's refusal to hold a hearing under *Telequz v. Reason*, 689 F.3d 322 (4th Cir. 2012). *Rivas v. Fischer*, 687 F.2d 514 (2d Cir. 2012). This is Petitioner's only opportunity for a state of federal appellate court review of any of the decisions the decisions in his case.

Respectfully submitted,

/s/ James E. Coleman, Jr.
James E. Coleman, Jr.
Duke University School of Law
210 Science Drive
Durham, NC 27708
(919) 613-7057

David Pishko
Law Office of David Pishko, P.A.
100 North Cherry Street, Suite 510
Winston-Salem, NC 27101
(336) 310-0088

*Attorneys for Appellant/Petitioner*

15

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 6th day of February, 2014, I caused this Petition For Rehearing and Rehearing *En Banc* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notices of such filing to the following registered CM/ECF users:

Mary Carla Hollis                    Danielle Marquis Elder
NC Department of Justice             NC Department of Justice
Post Office Box 629                  Post Office Box 629
Raleigh, NC 27101                    Raleigh, NC 27101


/s/ James E. Coleman, Jr
*Counsel for Appellant*